# UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH DAKOTA

### CENTRAL DIVISION



FILED

JAN 3 1 2013

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR. 12-30115-RAL |
| | * | |
| Plaintiff, | * | |
| | * | REPORT AND RECOMMENDATION |
| -vs- | * | CONCERNING MOTION TO |
| | * | SUPPRESS EVIDENCE |
| CLINT BROWN, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## SUMMARY

Clint Brown seeks to suppress evidence seized on four different days, following the issuance of three search warrants, on Fourth Amendment grounds and under the Exclusionary Rule. He claims that the warrants, and affidavits in support of them, were defective in several respects and that probable cause to search was lacking. Because federal law does not prohibit the use of the evidence seized, the Court recommends that the suppression motion be denied.

## BACKGROUND

On August 17, Lyman County Sheriff Steve Manger applied for and received a search warrant for Brown's Presho, South Dakota trailer house and two pickup trucks (a green Ford F-250 with a fuel tank in the rear and a black South Dakota licensed Chevy) parked outside of it. Manger requested the warrant for a .22 caliber rifle, a .12 gauge

shotgun, "[a]ny illegal narcotics to include marijuana and drug paraphernalia [and a]ny other evidence related to a Domestic Violence incident." The search began that morning and various items were seized, including a Tarus .22 caliber rifle, drugs, drug paraphernalia, a video tape, jump and flash drives (from the trailer), and a Remington .12 gauge shotgun (from the Chevy truck).

The following day, Jason Jares, a special agent with the South Dakota Division of Criminal Investigation, sought and obtained a warrant to search the trailer, the Chevy pickup truck situated next to it and any outbuildings on the property for:

1. Soiled clothing, hair, blood and other biological material or evidence of a physical assault of M.B. (Brown's 10-year-old daughter);

2. Data processing and storage devices, including the contents of a black LG cellular telephone and a Dell tower computer (both seized during the search conducted the day before); and

3. Firearms, including a Remington Magnum shotgun, a .22 caliber rifle (weapons seized as part of the August 17 search), ammunition and expended cartridges.

Searching officers seized several items, that day and the next, from locations miles away from the trailer, including broken glass, M.B.'s clothing and flip-flops, food and chew containers, an expended .12 gauge shotgun shell casing, plastic wads and two bracelets.

Based on this information and that disclosed during a forensic interview of M.B., Jares asked for and was given another warrant to search the same trailer and Chevy truck on August 22. Several items were taken from the trailer and truck during this search, including a rife scope, various gun cartridges and casings, an empty box of .22 caliber ammunition, a spiral notebook, miscellaneous papers, food and chew containers, a black

2

lace garment with stains, tennis shoes, a digital scale, drug paraphernalia and a sample of glass.

The Government promptly charged Brown with being a felon and drug user in possession of a firearm (the rifle and shotgun seized on August 17) in violation of 18 U.S.C. §922(g)(1), 922(g)(3) and 924(a)(2). He subsequently filed a motion to suppress the evidence seized on August 17, 18, 19 and 22, alleging that his Fourth Amendment rights were violated and that the evidence should be excluded under the "fruit of the poisonous tree" doctrine. The Court held a two-day hearing on the motion at which five witnesses testified and 50 exhibits were received into evidence.

## DISCUSSION

### A. Probable Cause

Brown initially claims that probable cause did not exist to issue the August 17 and 18 warrants. He declares that there was an insufficient showing made in the warrant affidavits to support the issuance of warrants for the search of the places and items requested.

Before a search warrant may be issued, the Fourth Amendment requires a showing of probable cause.[1] "Probable cause" is a "fair probability that contraband or evidence of a crime will be found in a particular place."[2] In determining whether probable cause exists,

---

[1]*See United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007).

[2]*Illinois v. Gates*, 462 U.S. 213, 238 (1983).

a court must look at the totality of the circumstances.[3] This determination is to be "based upon a common-sense reading of the entire affidavit"[4] and any "reasonable inferences" drawn therefrom.[5] The assessment of probable cause is made "from the viewpoint of a reasonably prudent police officer acting in the circumstances of the [ ] case."[6] As the name itself suggests, "probable cause is a practical, factual, and non-technical concept, [that] deal[s] with probabilities" and should be applied with this in mind.[7]

Once probable cause is found to issue a warrant, that finding is to be given great deference by a reviewing court.[8] The court's duty is simply to ensure that the issuing judge had a "substantial basis for . . . conclud[ing] that [the] search would uncover evidence of wrongdoing."[9] "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or

---

[3]*See id.* at 230, 234.

[4]*United States v. Seidel,* 677 F.3d 334, 338 (8th Cir. 2012) (*quoting United States v. Sumpter,* 669 F.2d 1215, 1218 (8th Cir. 1982)).

[5]*United States v. Wallace,* 550 F.3d 729, 732 (8th Cir. 2008).

[6]*Seidel,* 677 F.3d at 337 (*citing United States v. Reinholz,* 245 F.3d 765, 776 (8th Cir.), *cert. denied,* 534 U.S. 896 (2001)).

[7]*Seidel,* 677 F.3d at 337-38.

[8]*See Gates,* 462 U.S. at 236.

[9]*Id.* (*quoting Jones v. United States,* 362 U.S. 257, 271 (1960)).

marginal cases . . . should be largely determined by the preference to be accorded to warrants."[10]

Manger's affidavit, when examined in its totality and tested in a common-sense way, provided sufficient probable cause for a warrant to search Brown's trailer house and the pickup trucks. The affidavit established a fair probability that a rifle, shotgun, drugs, drug paraphernalia and evidence related to Brown's assault of his girlfriend, Tonya Brookshire, would be in the trailer and trucks.[11]

The fact that Manger failed to explain why he sought to search the pickup trucks in his warrant affidavit is of no consequence. "[A] vehicle found on [the] premises (except, for example, the vehicle of a guest or other caller) is considered to be included within the scope of a warrant authorizing a search of that premises."[12] Inasmuch as the trucks were both located within the warranted premises, they were subject to being searched for

---

[10]*United States v. Ventresca*, 380 U.S. 102, 109 (1965) (citation omitted).

[11]*See United States v. Adkins*, No. 06-3036-01-CR-S-ODS, 2008 WL 5110551 at **2, 9 (W.D. Mo. Dec. 8, 2008), *aff'd*, 636 F.3d 432 (8th Cir. 2011).

[12]*United States v. Pennington*, 287 F.3d 739, 745 (8th Cir.) (*quoting United States v. Revich*, 793 F.2d 957, 963 (8th Cir. 1986)), *cert. denied*, 537 U.S. 1022 (2002); *see also United States v. Bulgatz*, 693 F.2d 728, 730, n. 3 (8th Cir. 1982) ("The fact that affiant had crossed out the words 'motor vehicle' on the search warrant application did not preclude search of an automobile on the premises . . . ."), *cert. denied*, 459 U.S. 1210 (1983); *United States v. Hazelrigg*, CR. 08-50047-RHB, 2009 WL 1288574 at *5 (D.S.D. May 6, 2009) (It is a matter of common sense that individuals possessing and/or dealing drugs tend to hide their contraband in a variety of locations, including vehicles), *aff'd*, 422 Fed. Appx. 556 (8th Cir. 2011).

firearms and evidence pertaining to drug use and domestic violence which the warrant authorized be seized.[13]

The testimony set forth in Jares's affidavit was easily sufficient to provide probable cause for the issuance of a search warrant. This testimony, together with the inferences that could reasonably be drawn from it, demonstrated a fair probability that Brown had assaulted M.B., with his hands and a gun, and that evidence of the assault would be in the trailer and one of the trucks. The affidavit was detailed and replete with information from which probable cause could be found. Brown's probable cause claim is without merit.

## B. Nexus

Generally there must be a nexus between the criminal activity, the things to be seized and the places to be searched.[14] Brown contends that facts stated in Manger and Jares's affidavits lack connection to the property to be searched and the items to be seized. He points to certain supposedly amorphous reports from Brookshire – about a domestic violence incident and his recent use of methamphetamine – and from his mother – concerning his possession of two firearms – in support of his contention. He similarly assails Jares for failing to explain why there was a need to search the trailer house for biological evidence when the alleged assault of M.B. occurred in a "rural area" some distance away from the trailer.

---

[13]*See United States v. Gamboa*, 439 F.3d 796, 807-08 (8th Cir.), *cert. denied*, 549 U.S. 1042 (2006).

[14]*See* 2 Wayne R. LaFave, *Search and Seizure*, §3.7(d) (4th ed. 2004 & 2010-11 Supp.).

Much of what has already been discussed in the preceding section (with respect to probable cause) applies with equal force to Brown's nexus contention. It will suffice to say that there was plenty of evidence presented in the search warrant affidavits to justify the search of his trailer and both pickup trucks.

Three days before Manger's affidavit was prepared, Brookshire disclosed that (1) she had been involved in a domestic violence incident with Brown while living with him in Presho, (2) two of her ribs were broken in that incident, (3) he threatened to find and kill her if she tried to leave him, and (4) she witnessed him smoking methamphetamine on August 11. On August 17, Brown's mother revealed that (1) he "was on some type of drugs", (2) he had been paranoid ever since Brookshire had left, (3) he had shot his dog in front of M.B. on the child's birthday, (4) he had barricaded the door on August 17 and would not allow access into the trailer, (5) he was "wigging out" and would get this way when he used meth, (6) he was in possession of a .22 caliber rifle and a .12 gauge shotgun, and (7) he had been going downhill for the past week and needed help.

In his affidavit, Jares stated that (1) Brown struck M.B. with his hands and with a gun "out in a rural area" near Presho, (2) she had bled and soiled herself, (3) he had made her strip off her clothing, and (4) the two had driven back to town in his pickup truck.

Manger and Jares provided the necessary linkage in their affidavits between the offenses being investigated (firearms, drugs, domestic violence, assault and child abuse) and the places to be searched (Brown's trailer and the two trucks) for the issuing judge to

find probable cause for the August 17 and 18 warrants.[15] Brown's contentions otherwise, are inefficacious.

## C. Reliable Informants

In a related argument, Brown attacks the credibility of the information set forth in Manger's warrant affidavit. Brown says that the affidavit lacks the information needed to appropriately judge the reliability of the informants and to find probable cause for the issuance of the August 17 search warrant. The Court is not convinced.

In informant probable cause cases, it is critical that a showing be made that the informant is a credible person and that his information is reliable; veracity is not assumed.[16] A comparable showing, however, is not needed when the information comes from a citizen who is a crime victim or witness.[17]

---

[15]*See United States v. Houston,* 665 F.3d 991, 995 (8th Cir.), *cert. denied,* 132 S.Ct. 2418 (2012); *United States v. Keele,* 589 F.3d 940, 943-44 (8th Cir. 2009); *United States v. Alexander,* 574 F.3d 484, 489-90 (8th Cir. 2009), *cert. denied,* 130 S.Ct. 3273 (2010); *United States v. Summage,* 481 F.3d 1075, 1077-78 (8th Cir. 2007), *cert. denied,* 552 U.S. 1104 (2008); *United States v. Chrobak,* 289 F.3d 1043, 1046 (8th Cir. 2002); *see also United States v. Hopkins,* 200 Fed. Appx. 155, 157-58 (3d Cir. 2007) (probable cause may be inferred based on the type of crime involved, the kind of items sought, the suspect's opportunity for concealment and where a criminal might hide the fruits of the crime).

[16]*See* 2 LaFave, *Search and Seizure,* §3.4(a) at 219.

[17]*Id.*

The Supreme Court made this clear more than four decades ago.[18] And the Court has since proceeded as if veracity may be assumed when information comes from the victim of or a witness to a crime.[19]

Courts have recognized the distinction between an informant from the criminal milieu and a victim-eyewitness and not applied the proof-of-veracity rules to the latter.[20] "'[A] citizen informant is inherently more reliable than the usual police informants who are often mired in some criminal activity themselves.'"[21] Thus, the personal and recent knowledge of a named victim or eyewitness is sufficient to establish probable cause.[22] A common scenario, courts often encounter, is one in which a citizen takes the initiative in

---

[18]*See Jaben v. United States*, 381 U.S. 214, 224 (1965).

[19]*See Chambers v. Maroney*, 399 U.S. 42, 46-47 (1970).

[20]*See* 2 LaFave, *Search and Seizure*, §3.4(a), n.8 at 220.

[21]*Edwards v. Cabrera*, 58 F.3d 290, 294 (7th Cir. 1995) (internal citations omitted).

[22]*See United States v. Dukes*, 432 F.3d 910, 913-14 (8th Cir.), *cert. denied*, 547 U.S. 1155 (2006); *United States v. McKinney*, 328 F.3d 993, 994 (8th Cir. 2003); *United States v. Lewis*, 738 F.2d 916, 922 (8th Cir. 1984), *cert. denied*, 470 U.S. 1006 (1985); *United States v. Ross*, 713 F.2d 389, 393 (8th Cir. 1983); *Cundiff v. United States*, 501 F.2d 188, 190 (8th Cir. 1974); *see also United States v. Patane*, 304 F.3d 1013, 1016-17 (10th Cir. 2002) (relying on "the presumption of veracity accorded other victim-witnesses"), *rev'd on other grounds*, 542 U.S. 630 (2004); *United States v. Sparks*, 265 F.3d 825, 830 (9th Cir. 2001) ("This was not an unreliable criminal informant, but a complaining victim who had no apparent reason to lie."); *United States v. Burbridge*, 252 F.3d 775, 778 (5th Cir. 2001) (stating that "[a]n ordinary citizen's eye witness account . . . is normally sufficient to supply probable cause" without further corroboration); *see generally* 2 LaFave, *Search and Seizure*, §3.4(a), nn. 9-20 at 220-21.

communicating to law enforcement authorities that she has been a victim of or a witness to a battery or assault-related offense.[23]

Like the eyewitness, who reports what he saw and heard, a law enforcement officer is generally presumed to be a reliable source of information for purposes of determining probable cause. The Supreme Court cogently made this point in *United States v. Ventresca*,[24] and lower courts have followed suit and not required a special showing of reliability for police informants.[25] In the Eighth Circuit, where an officer is the source of information in a warrant affidavit, the officer is considered to be "the functional equivalent of a reliable informant."[26]

Here, the issuing judge knew the source of the information Manger set forth in the warrant affidavit. It was Brown's mother, Brookshire (who Brown had allegedly beat up), and Danny Hoffman (an investigating police officer from Russell, Kansas). All of them provided information about Brown that was both recent and personal and that showed he had engaged in criminal conduct. In applying a totality of the circumstances analysis, the

---

[23]*See McBride v. Grice*, 576 F.3d 703, 707-08 (7th Cir. 2009); *United States v. Harness*, 453 F.3d 752, 754-55 (6th Cir. 2006), *cert. denied*, 551 U.S. 1165 (2007); *United States v. Strong*, CR. 09-375(1) (DWF/RLE), 2010 WL 889900 at **1, 7 (D. Minn. March 8, 2010); *State v. Remy*, 167 Vt. 541, 542-43, 711 A.2d 665, 666 (1998).

[24]380 U.S. at 110-11.

[25]*See United States v. Nguyen*, 526 F.3d 1129, 1133-34 (8th Cir. 2008); *United States v. Apker*, 705 F.2d 293, 304 (8th Cir. 1983), *cert. denied*, 465 U.S. 1005 (1984); *see also* 2 LaFave, *Search and Seizure*, §3.5(a), n.11 at 271-72.

[26]*United States v. Jones*, 471 F.3d 868, 874 (8th Cir. 2006), *cert. denied*, 551 U.S. 1121 (2007); *United States v. Hyten*, 5 F.3d 1154, 1156 (8th Cir. 1993).

judge reviewing the affidavit made a practical, common-sense determination that there was a fair probability that evidence of a crime could be found in Brown's residence and the two pickup trucks parked next to it.[27] A substantial basis existed for doing so and for reaching the ultimate conclusion that there was probable cause for the requested search and seizure.[28] While the affidavit may not have been a model of clarity or as detailed as it could have been, it nonetheless satisfied the probable cause strictures of the Fourth Amendment.

## D. Particularity

Ever vigilant, Brown asserts that the August 17 and 18 search warrants were overbroad and violated the Fourth Amendment's particularity requirement. As he sees it, the August 17 warrant was nothing more than a "laundry list of innocuous items that would be found in any residence along any street anywhere." Specifically, he complains about not being named in the warrant, about the cursory descriptions of the two pickup trucks and about officers being able to conduct a general search for any evidence related to a domestic assault incident. He likewise carps that the August 18th warrant gave officers broad and limitless authority to search through electronic and digital storage devices, including his cell phone and tower computer, to document M.B.'s "lifestyle and living conditions."

---

[27]*See Gates*, 462 U.S. at 238.

[28]*See id.* at 238-39 ("the duty of a reviewing court is to simply ensure that the magistrate had a 'substantial basis for concluding' that probable cause existed") (*citing Jones v. United States*, 362 U.S. 257, 271 (1960)).

The Fourth Amendment's Warrant Clause categorically prohibits the issuance of a warrant unless it "particularly describe[s] the place[s] to be searched and the person or things to be seized."[29] The purpose of the particularity requirement is to prevent general searches. "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit."[30] A search warrant is proper if its description of the evidence to be seized is "'sufficiently definite so as to enable the officer with the warrant to reasonably ascertain and identify the place to be searched and the objects to be seized.'"[31] The requisite degree of specificity is flexible, depending upon the circumstances.[32] Thus, a description is generally valid "if it is as specific as the circumstances and nature of the activity under investigation permit."[33] The standard to be used in making this determination is one of "practical accuracy rather than a hypertechnical one."[34] A court must "base its decision on such factors as the purpose for

---

[29]U.S. Const. amend. IV.

[30]*Maryland v. Garrison*, 480 U.S. 79, 84 (1987); *see also Andresen v. Maryland*, 427 U.S. 463, 480 (1976); *Stanford v. Texas*, 379 U.S. 476, 481-82 (1965); *Marron v. United States*, 275 U.S. 192, 195-96 (1927).

[31]*United States v. Frederickson*, 846 F.2d 517, 519 (8th Cir. 1988) (*quoting United States v. Muckenthaler*, 584 F.2d 240, 245 (8th Cir. 1978)).

[32]*See United States v. Kail*, 804 F.2d 441, 445 (8th Cir. 1986).

[33]*Id.*

[34]*United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011), *cert. denied*, 132 S.Ct.

(continued...)

which the warrant was issued, the nature of the items to which it is directed, and the totality of the circumstances surrounding the case."[35]

Applying these standards, the Court is not persuaded that either search warrant was insufficiently particular. The warrants described both the places to be searched and the things to be seized with enough particularity to pass constitutional muster. The searches were confined to Brown's trailer house, the pickup trucks beside it and outbuildings and hence were limited to a specific area – one executing officers were familiar with.[36] The warrants' descriptions of items to be seized were detailed enough to guide officers in their search.[37] Furthermore, the items sought were likely to provide relevant information concerning Brown's suspected involvement in criminal activity ranging from the unlawful possession of firearms and use of drugs to domestic violence, assault and child abuse.[38]

---

[34](...continued)
1713 (2012); *Summage*, 481 F.3d at 1079; *see also United States v. Johnson*, 541 F.2d 1311, 1313 (8th Cir. 1976) (*per curiam*).

[35]*Fiorito*, 640 F.3d at 346 (citation omitted); *see also Andresen*, 427 U.S. at 480, n. 10; *Summage*, 481 F.3d at 1079.

[36]*See United States v. Sherrell*, 979 F.2d 1315, 1317 (8th Cir. 1992).

[37]*See United States v. Wayne*, 903 F.2d 1188, 1195-96 (8th Cir. 1990).

[38]*See Texas v. Brown*, 460 U.S. 730, 742 (1983) (an officer need only have a reasonable belief "that certain items may be contraband or stolen property or useful as evidence of a crime"); *United States v. Krasaway*, 881 F.2d 550, 552053 (8th Cir. 1989) (descriptions of items in warrant "not drafted with a great deal of specificity" but sufficient under the circumstances); *United States v. Martin*, 866 F.2d 972, 978 (8th Cir. 1989) (the descriptions were directed toward items that would likely provide information concerning defendant's suspected involvement in criminal activity).

The August 17 and 18 warrants sufficiently circumscribed the authority of where officers could search and what they could seize.[39] The residence, outbuildings and vehicles referred to in the warrants were adequately described.[40] And the descriptions of the firearms, "illegal narcotics", drug paraphernalia, soiled clothing, hair, blood and "other biological material" and data processing and storage devices (including a cell phone and

---

[39]*See* 2 LaFave, *Search and Seizure*, §§4.5, 4.6.

[40]*See United States v. Carrillo-Diaz*, 361 Fed. Appx. 707, 708-09 (8th Cir.) (vehicles "parked on the property"), *cert. denied*, 130 S.Ct. 3486 (2010); *United States v. Palega*, 556 F.3d 709, 713-14 (8th Cir.) (residence), *cert. denied*, 130 S.Ct. 219 (2009); *United States v. Rogers*, 150 F.3d 851, 854-55 (8th Cir. 1998) (rural property with two motor homes on it); *cert. denied*, 525 U.S. 1113 (1999); *United States v. Bieri*, 21 F.3d 811, 815-16 (8th Cir.) (residence and other buildings on tract of land), *cert. denied*, 513 U.S. 878 (1974); *Wangrow v. United States*, 399 F.2d 106, 114-15 (8th Cir.) (not necessary that search warrants state the name of the vehicle owner), *cert. denied*, 393 U.S. 933 (1968); *United States v. Vaughn*, 830 F.2d 1185, 1186 (D.C. Cir. 1987) (warrant description of "a Blazer 4 x 4 two-door Black in color with tinted windows bearing Maryland tags" sufficient because reference made to defendant's drug distribution network being operated out of a certain store, thus limiting the warrant to such a Blazer in the vicinity of the store); *see also* 2 LaFave, *Search and Seizure*, §§4.5(a), (d).

computer) were precise enough.[41] The same is true of the descriptions for the evidence

related to the Brookshire domestic violence incident and M.B.'s alleged physical assault.[42]

The search warrants in question were not overbroad. A practical, rather than

pedantic, reading of the warrants told the officers where and what to search for. In the

final analysis, the warrants' descriptions of the places to be searched and the items to be

seized were sufficiently particularized to satisfy the prescriptions of the Fourth

---

[41]*See United States v. Sherman*, 372 Fed. Appx. 668, 671-72, 675-76 (8th Cir. 2010)
(data processing and storage devices); *United States v. Cartier*, 543 F.3d 442, 447-48 (8th
Cir. 2008) (lack of search methodology or strategy for computers and their contents did
not render search warrant invalid), *cert. denied*, 555 U.S. 1202 (2009); *United States v.
Adjani*, 452 F.3d 1140, 1147-50 (9th Cir.) (computers, hard drives, discs and storage
devices), *cert. denied*, 549 U.S. 1025 (2006); *United States v. Campbell*, 256 F.3d 381, 388-89
(6th Cir.) ("[a]ny and all firearms" believed to be in a felon's possession); *cert. denied*, 534
U.S. 1032 (2001); *United States v. Schmitz*, 181 F.3d 981, 987-88 (8th Cir. 1999) (clothing in
connection with a domestic assault case); *United States v. Moore*, 149 F.3d 773, 782-83 (8th
Cir.) (drug paraphernalia), *cert. denied*, 525 U.S. 1030 (1998); *Quigg v. Estelle*, 492 F.2d
343, 345-46 (9th Cir.) ("any .22 caliber pistol"), *cert. denied*, 419 U.S. 848 (1974); *United
States v. Jourdain*, CR. No. 06-313 (01-02) (RHK/RLE), 2007 WL 269827 at **23-24 (D.
Minn. Jan. 26, 2007) (clothing, hair and blood); *State v. Henning*, 975 S.W.2d 290, 296
(Tenn. 1998) (illegal narcotics); *People v. Staton*, 924 P.2d 127, 135 (Colo. 1996) (blood
traces); *State v. Benner*, 40 Ohio St.3d 301, 306-07, 533 N.E.2d 701, 709 (1988) (hair), *cert.
denied*, 494 U.S. 1090 (1990); *see also* 2 LaFave, *Search and Seizure*, §§4.6(a), (b) and (d).

[42]*See United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001) (wide range of items
related to drug activities); *United States v. Horn*, 187 F.3d 781, 787-88 (8th Cir. 1999)
(objects relating to contact with an unidentified Texas woman), *cert. denied*, 529 U.S. 1029
(2000); *United States v. Hibbard*, 963 F.2d 1100, 1102 (8th Cir. 1992) (evidence related to
disappearance of a woman); *United States v. Caves*, 890 F.2d 87, 89, 91-93 (8th Cir. 1989)
("Controlled Substances/Documents such as but not limited to, invoices and receipts
indicating possession of property."); *Commonwealth v. Sherman*, 603 Pa. 92, 127, 982 A.2d
483, 504-05 (2009) (evidence of physical injury to a child), *cert. denied*, 130 S.Ct. 2415
(2010); *State v. Kirsch*, 139 N.H. 647, 650, 652, 662 A.2d 937, 939, 941 (1995) ("other items
related to several acts of sexual acts with children"); *State v. Lingo*, 32 Wash. App. 638,
639-40, 642, 649 P.2d 130, 131, 132-33 (1982) ("any and all evidence of assault and rape");
*see also* 2 LaFave, *Search and Seizure*, §4.6(a) and (d).

Amendment. Suppression of the evidence seized pursuant to the warrants, on particularity grounds, is neither necessary nor required.

### E. Tainted Fruit

Brown lastly argues that the August 18 and 22 search warrants, and the searches conducted on those days and on August 19, were invalid because they were based, at least in part, on evidence discovered during the August 17 search. He maintains that the latter search violated the Fourth Amendment and that any evidence viewed or seized in connection with the search unlawfully tainted the subsequent affidavits, warrants and searches under the "fruit of the poisonous tree" doctrine.[43]

Brown's argument is unavailing. The Court has already determined that the August 17 warrant, and the search and seizure of evidence conducted pursuant to it, did not violate the Fourth Amendment. This being the case, the search was not a "poisonous tree" from which any tainted fruit could or did fall from.

### F. Good Faith

Regardless of whether the warrants comported with the mandates of the Fourth Amendment, the searches of the trailer house and pickup trucks and the seizure of items from them must nevertheless be upheld. The basis for doing so is the "good faith" exception to the warrant requirement announced in *United States v. Leon*.[44]

---

[43]*See Wong-Sun v. United States*, 371 U.S. 471, 487-88 (1963).

[44]468 U.S. 897 (1984).

In *Leon*, the Supreme Court created a good-faith exception to the Fourth Amendment Exclusionary Rule.[45] Under this exception, the Rule is not to "be applied to exclude the use of evidence obtained by [ ] officers acting in reasonable reliance on a detached and neutral magistrate judge's determination of probable cause in the issuance of a search warrant that is ultimately found to be invalid."[46]

The rationale behind the exception is simple. It is the issuing judge's responsibility to determine whether probable cause exists and, if so, to issue a warrant that complies with the dictates of the Fourth Amendment. Ordinarily, an officer cannot be expected to question or second guess the judge's probable-cause determination or the technical sufficiency of the warrant itself. "[O]nce the warrant issues, there is literally nothing more the [officer] can do in seeking to comply with the law."[47] Penalizing the officer for the judge's errors, rather than the officer's, does not deter Fourth Amendment violations.[48]

The *Leon* exception does not exclude evidence when an officer's reliance on a judge-issued warrant is objectively reasonable.[49] There are, however, four circumstances in which the exception does not apply:

---

[45]468 U.S. at 922.

[46]*United States v. Taylor*, 119 F.3d 625, 629 (8th Cir.) (*citing Leon*, 468 U.S. at 905-922), *cert. denied*, 522 U.S. 962 (1997).

[47]*Leon*, 468 U.S. at 921.

[48]*See id.* at 916, 921.

[49]*See id.* at 922; *see also Massachussetts v. Sheppard*, 468 U.S. 981, 988 (1984); *United States v. Moya*, 690 F.3d 944, 948 (8th Cir. 2012).

1.    When the judge issuing the warrant is misled by information in an affidavit that the affiant knows is false or is made with reckless disregard for the truth;

2.    When the issuing judge wholly abandons his judicial role;

3.    When the affidavit is so lacking in indicia of probable cause that the official belief in its existence is entirely unreasonable; and

4.    When the warrant is so facially deficient that the executing officer cannot reasonable presume it to be valid.[50]

None of these disqualifying conditions precedent are present in this case. Nothing Manger or Jares stated in their affidavits contain knowing, intentional or reckless falsities. Any averments to the contrary have no basis in fact and are not supported by the record.

There also is no evidence that the issuing judges failed to act in a neutral and detached manner or that they were "mere rubber stamps."[51] Nor is there evidence to suggest the judges were somehow involved in the "competitive enterprise of ferreting out crime"[52] or that they blindly approved the search warrants.

Notably, the information given to the issuing judges was more than sufficient to enable them to decide whether probable cause existed. In fact, the content of Manger and

---

[50]See Leon, 468 U.S. at 923; Houston, 665 F.3d at 995.

[51]See and compare with Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 326-27 (1979); see also United States v. Martin, 297 F.3d 1308, 1316-18 (11th Cir.) (discussing judicial abandonment under Leon), cert. denied, 537 U.S. 1076 (2002).

[52]See Johnson v. United States, 333 U.S. 10, 14 (1948).

Jares's affidavits was far richer in detail than that provided in other cases[53] and was by no means "bare bones."

Finally, Manger and Jares's reliance on the warrants was in good faith and objectively reasonable. They understandably believed that they had valid warrants, or at least, court-approved authority to search for and seize evidence germane to their firearm, narcotics, domestic violence, assault and child abuse investigations from Brown's residence and the vehicles alongside of it. Nothing would have made reasonable officers, in Manger and Jares's positions, conclude otherwise.[54]

It is important to remember that the Constitution protects property owners, not by giving them a license to engage the police in debate over the propriety of a warrant, but by interposing the "deliberate, impartial judgement of a judicial officer . . . between [themselves] and the police"[55] and by providing a right to suppress evidence improperly obtained and a cause of action for damages. Brown received the benefit of a judge's impartial evaluation before his property, and that which was under his control, was searched. Each search was supported by probable cause. Suppression of the evidence seized from his residence and the two pickup trucks would be a remedy out of proportion

---

[53]See e.g. Leon, 468 U.S. at 915; Aguilar v. Texas, 378 U.S. 108, 109 (1964); Giordenello v. United States, 357 U.S. 480, 481 (1958).

[54]See Moya, 690 F.3d at 948-49; Houston, 665 F.3d at 995-96; United States v. Darr, 661 F.3d 375, 378-80 (8th Cir. 2011); United States v. Hudspeth, 525 F.3d 667, 676 (8th Cir. 2008); United States v. Carpenter, 341 F.3d 666, 671-72 (8th Cir. 2003).

[55]Wong-Sun, 371 U.S. at 481-82.

to any Fourth Amendment transgression that may have occurred and is uncalled for under the circumstances.

## CONCLUSION

Probable cause existed for the search and seizure of items, believed to contain evidence of criminal wrongdoing, from Brown's trailer house and the pickup trucks. There was a clear nexus between the suspected offenses and the property searched. The information supplied for the issuance of the search warrants came from credible sources and was reliable. And the warrants were not overbroad but rather sufficiently particular in their descriptions. At any rate, the searches and seizures conducted were based on an objectively reasonable (good faith) belief that the warrants, two different judges found probable cause to issue, were valid. Brown, therefore, cannot succeed on his suppression motion.

## RECOMMENDATION

Accordingly, it is hereby

RECOMMENDED that Brown's Motion to Suppress Evidence[56] be denied in its entirety.

---

[56]*See* Dkt. No. 21.

NOTICE

An aggrieved party must filed written objections, within 14 calendar days, to challenge this Report and Recommendation before the assigned United States District Judge.[57]

Dated this 31st day of January, 2013, at Pierre, South Dakota.

BY THE COURT:

MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE

---

[57]*See* 28 U.S.C. §636(b)(1).